## Stiffler et al., Appellants, v. Pennsylvania Coal & Coke Co.

Argued October 8, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. J. Kintner,* of *Stephens & Kintner,* for appellant.

*P. J. Little,* for appellee, was not heard.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 25, 1929:

In this action of ejectment, to recover certain coal lands in Cambria County, both parties, plaintiffs and defendant, after various pleadings, agreed that the controlling question involved was one of law for decision by the court. This question was resolved in favor of defendant and plaintiffs have appealed.

The principal plaintiffs are the grandchildren, and some great-grandchildren, representing deceased grandchildren, of Jacob Stiffler, deceased (who was the original source of title claimed by both plaintiffs and defendant), also two other persons, Anna Bell White and Henry Elias White, named, with the grandchildren, in the will of Jacob Stiffler, as remaindermen to inherit his real estate. Defendant corporation, the Pennsylvania Coal & Coke Company, holds the coal property in ques-

tion as grantee from those who acquired it by deed from John Stiffler and Mary Stiffler, they being vested with power of sale by the sixth paragraph of Jacob Stiffler's will as follows: "After the death of my said son John Stiffler and my said daughter in law Mary Stiffler, the real estate......bequeathed to my daughter in law shall descend to the children of my said son John Stiffler and to Anna Bell White and Henry Elias White their heirs and assigns forever. Nevertheless, they my said son John Stiffler and his said wife shall have full power to sell said land or any part thereof, subject however, to the charge thereon as aforesaid, and make deeds therefor."

In previous paragraphs of his will, Jacob Stiffler had devised "unto [his daughter-in-law] Mary Stiffler, wife of John Stiffler," all of his estate "during the term of her natural life." After this, he directed that "Mary Stiffler and her husband, John Stiffler, my eldest son, shall clothe, keep and maintain my beloved wife, Lydia, and my sons, Henry Stiffler and William Stiffler," and further, that the cost of so doing should be "a charge on the land devised to my said daughter-in-law Mary Stiffler." The testator still further provided that should his daughter-in-law survive his son John, she should have "absolute possession and control of my said real estate during her natural life."

Testator did not appoint either his son John, or his daughter-in-law Mary Stiffler, executors under his will, and Mary did not survive John.

After the death of testator's wife and his sons Henry and William, in whose favor he had created the charge upon his real estate, John Stiffler and Mary Stiffler, by two deeds, one dated in April, 1899, and the other in May, 1900, for full and valuable consideration, conveyed all the coal underlying the surface of certain of testator's lands, being the property here in controversy, to defendant's predecessors in title.

Some twenty-eight years later, in December, 1928, plaintiffs began the present action of ejectment, claim-

ing that, both Mary Stiffler and John Stiffler having died, the last of them in 1925, they, the plaintiffs, were entitled, under the above quoted sixth paragraph of the will of Jacob Stiffler, deceased, to the real estate in controversy. Defendant answered that the before mentioned deeds to its predecessors in title had been made and executed by John Stiffler and Mary Stiffler, after the death of those persons in whose favor a charge upon the land had been created by Jacob Stiffler, deceased, and that said John and Mary Stiffler were vested with full power, under the above sixth paragraph of the will of Jacob Stiffler, deceased, to sell and grant the land in fee at the time they made the deeds to defendant's predecessors in title; hence plaintiffs could make no proper claim thereto.

In plaintiffs' answer to defendant's petition for judgment, that being plaintiffs' final pleading, they stated their position as follows: "[It is] admitted......that Mary Stiffler and John Stiffler made papers purporting to be deeds to [defendant's predecessors in title], but [it is denied] that Mary and John Stiffler......had any right to make [such] deeds......, Mary Stiffler having only a life estate and John Stiffler, her husband, a right of possession, except if it became necessary to sell...... for the support and maintenance of Lydia Stiffler, Henry Stiffler and William Stiffler." After this declaration of their position plaintiffs stated they agreed with defendant "that the question involved" was one "of law," namely, "whether Mary Stiffler and John Stiffler, after the death of Lydia Stiffler, Henry Stiffler and William Stiffler (with whose support the land was charged), had a right to convey......the real estate owned by Jacob Stiffler." Plaintiffs' answer concludes thus: "If the court should find that Mary Stiffler and John Stiffler possessed no such power, then judgment should be entered for the plaintiffs; but if the court should find that Mary Stiffler and John Stiffler had such power under

the will [of Jacob Stiffler, deceased], then judgment should be entered for the defendant." ·

It is not necessary to decide just what interest in this property was possessed by John Stiffler. It is plain that Mary, John's wife, had a life estate, and we agree with the court below that it is equally plain that the testator, for purposes of his own, vested in Mary and John "full power to sell" the property, which they deeded to defendant's predecessors in title.

The court below well states: "It is certain that, in the lifetime of the three parties [in whose favor testator had created a charge upon his real estate], the land could not have been sold by Mary Stiffler or......her husband, unless it was sold subject to the charge upon it for the maintenance of the three objects of [testator's] bounty; [but, aside from this,] there is no reservation whatever in the power of sale contained in the sixth paragraph of the will. Although [testator] provides in the first part of this paragraph that, after the death of his daughter-in-law, the land shall descend to the children of his......son, John Stiffler, and to Anna Bell White and Henry Elias White, their heirs and assigns forever, yet, in the same paragraph, and the last expression of testator, [he] gives to John Stiffler and Mary Stiffler......absolute authority and full power to sell the lands or any part thereof,......, and also power to make deeds therefor. At the time when this power was exercised......, [testator's] widow and [two] sons [in whose favor the charge was created] had died; therefore, the question of a charge upon the land does not arise......, [and] the absolute power to sell...... rested in the grantees of the power."

Counsel for appellants strenuously argue that the construction just stated cannot be right, for, they say, a sale by John and Mary Stiffler would defeat the vested interest of the ultimate remaindermen, who were to take and possess the property after the death of testator's son John and the latter's wife Mary. The answer

is, however, that such a sale in no wise defeated any vested rights. This case is ruled in principle by Gelb v. Wisberger, 247 Pa. 416. There the testator devised real estate to his wife for life, "with the privilege to dispose of any or all of the real estate if she chooses," and with remainder over to others at the death of the wife. We held, adopting the opinion of Judge SCHAFER, of the Common Pleas of Allegheny County, that, while it was plain the testator did not intend his widow to have more than a life estate, she had power under the will to convey a fee, saying: "We are of opinion that testator intended his wife should have [for life] all his property, and that she might turn the real estate into money if she so decided...... As to whether [she] has power to expend more than the income of the property is a matter......which is within the jurisdiction of the orphans' court and can be regulated by them so as to do justice and secure the rights of the remaindermen: Watson's Est., 241 Pa. 271." In Watson's Estate, just mentioned, where a life tenant, with power to sell, had converted the property into money, we said, at page 280, that she held "the fund for the specific purpose named in the will," and that, as to it, she occupied "the position of a quasi trustee for herself and the remainderman." So here, the purchase money for the property in controversy took the place of the coal conveyed. Those who made the conveyances in fee to defendant's predecessors in title exercised the power of sale vested in them by the will of Jacob Stiffler, and they held such purchase money as quasi trustees for whomever had a life interest and for the ultimate remaindermen. With this proper construction placed upon the will of Jacob Stiffler, deceased, the question, so forcibly argued by counsel for appellants, as to the power of sale being in conflict with, and defeating attributes of, the absolute estates in remainder given to testator's ultimate beneficiaries, disappears from the case.

It seems that the coal here involved was not opened or operated before the death of testator, though he knew his lands were underlaid with good, marketable, bituminous coal; and it is quite probable that testator gave the power of sale contained in the sixth paragraph of his will, appreciating the fact that, under certain circumstances, the life tenants might be able to create a source of income only by selling this underlying coal. However this may be, yet, defendant's predecessors in title through the exercise of that power, acquired a fee simple estate; and the court below properly so held.

The judgment is affirmed.